IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

    v.                                    CRIMINAL NO. 2:22-CR-19
                                              (KLEEH)

**DONALD RAY CANTRELL,**

    **Defendant.**

## MEMORANDUM OPINION AND ORDER
## DENYING AMENDED MOTION TO SUPPRESS [ECF NO. 43]

Pending before the Court is an amended motion to suppress filed by Defendant Donald Ray Cantrell ("Cantrell"). For the reasons discussed herein, the motion is **DENIED**.

### I. FACTS

The Court finds the following facts based on the parties' briefs and the arguments presented during the suppression hearing.[1] On February 4, 2022, state law enforcement applied for and obtained a search warrant for Cantrell's residence from a local magistrate judge. The search warrant indicated that law enforcement was looking for methamphetamine or other controlled substances; paraphernalia; firearms/ammunition; U.S. currency; and other items/evidence related to the manufacture, distribution, dispensing, possession, sale, etc. of controlled substances.

---

[1] The Court convened a hearing on the amended motion to suppress on October 18, 2022. The parties did not present any evidence during the hearing, but they made arguments in support of their positions.

**MEMORANDUM OPINION AND ORDER**
**DENYING AMENDED MOTION TO SUPPRESS [ECF NO. 43]**

The search warrant affidavit included the following facts:

1. During the latter part of January and early part of February 2022, Corporal J.M. Tallman, WVSP B.C.I./MRDTF, had spoken with a reliable confidential informant, CI-19-004 who had been in communication with Donald Ray CANTRELL. CI-19-004 had been communicating with CANTRELL had discussed future drug transactions. CI-19-004 advised the undersigned officer that he/she would be able to purchase methamphetamine from this subject in the near future. CI-19-004 has recently provided the undersigned officer with reliable information and is credible.

2. On February 2, 2022, Federal probation had travelled to the residence of CANTRELL and were conducting a home visit when they discovered a firearm/handgun. At this point members of the WVSP/Beverly detachment had responded to the residence and collected the firearm. CANTRELL was taken into custody for possessing a firearm. CANTRELL is prohibited from possessing a firearm. During the arrest, CPL D.R. Wolford had spoken with a female subject on scene who CANTRELL had called "LORI WILSON". During this time CPL Wolford had asked this female subject for her identification and she advised that her name was, Pansy Loraine RAY. CPL Wolford then verified by looking at RAY's driver's license.

3. On February 3, 2022, during the afternoon hours, Investigator Earl Haynes had contacted CPL D.L. VanMeter in reference to CANTTRELL's phone calls from the jail to a female, who CANTRELL identified as "LORI" and advised her, that in his dirty laundry basket, inside of a gray in color toboggan, were four "bands". CANTRELL further advised her to put $2,700.00 dollars on his book at the jail. CANTRELL advised her to use $1,300.00 dollars for bills, etc. CANTRELL further advised to not let anything happen to the truck.

**MEMORANDUM OPINION AND ORDER**
**DENYING AMENDED MOTION TO SUPPRESS [ECF NO. 43]**

> 4. On February 4, 2022, CPL D.L. VanMeter was contacted by TVRJ Investigator Earl Haynes in reference to CANTRELL. Investigator Haynes advised that he had been listening to CANTREL's phone calls. Investigator Haynes advised, CANTRELL had spoken to "LORI" and told her to remember what he does up where "Bruce" watches tv. "LORI" advised that she does, and CANTRELL then told her not to get it all out. CANTRELL advised to keep "BRUCE's" room the same way and keep everything stacked up. CANTRELL advised "LORI"; you don't have anything to worry about the State Police can't come back to the house. CANTRELL also advised "LORI" to put $18,000.00 dollars on his books at the jail. "LORI" had advised that Brian SMITH was currently at the residence. Brian Smith was recently identified as a supplier of methamphetamine by CI-19-004. CANTRELL mentions to "LORI", what sounds like, "it's in the paint can". During the phone calls the subjects appear to be talking in code. The undersigned officer is familiar with inmates using code words because inmates know that their phone calls are being recorded. In this officers training and experience, it is believed that the subjects are discussing U.S. currency and illegal controlled substances.

See Amended Motion, Exh. 1, ECF No. 43-1. The same day, police executed the search warrant at Cantrell's residence.

During the search, police seized suspected methamphetamine, U.S. currency, cell phones, digital scales, and other items. Based upon the items seized from Cantrell's home, on August 16, 2022, the grand jury returned a three-count indictment, charging Cantrell with (Count One) Conspiracy to Distribute More Than 50 Grams of Methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A); (Count Two) Unlawful Possession of a Firearm, in

**MEMORANDUM OPINION AND ORDER**
**DENYING AMENDED MOTION TO SUPPRESS [ECF NO. 43]**

violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); and (Count Three) Possession with Intent to Distribute More Than 50 Grams of Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). Cantrell moves to suppress the evidence from the search, arguing that the search was unconstitutional.

## II. ANALYSIS

The Fourth Amendment to the United States Constitution provides,

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Probable cause to search a home exists if there is a fair probability that evidence of a crime is located within the residence. See Illinois v. Gates, 462 U.S. 213, 238 (1983). Probable cause "does not require officers to rule out a suspect's innocent explanation for suspicious facts." United States v. Bosyk, 933 F.3d 319, 327 (4th Cir. 2019) (citation omitted).

"When reviewing the probable cause supporting a warrant, a reviewing court must consider only the information presented to the magistrate who issued the warrant." United States v. Wilhelm, 80 F.3d 116, 118 (4th Cir. 1996) (citing United States v.

**MEMORANDUM OPINION AND ORDER**
**DENYING AMENDED MOTION TO SUPPRESS [ECF NO. 43]**

Blackwood, 913 F.2d 139, 142 (4th Cir. 1990)).  The Court then applies a "'totality-of-the-circumstances' test to determine whether probable cause supported a search warrant." Id. (citing Gates, 462 U.S. at 238.

The "good faith" exception may sometimes apply to salvage a defective warrant.  See United States v. Leon, 468 U.S. 897, 922 (1984).  In Leon, the Supreme Court held that the exclusionary rule does not bar admission of evidence obtained when officers acted in objectively reasonable reliance on a search warrant that was ultimately found to be invalid.  Id.  "Leon teaches that a court should not suppress the fruits of a search conducted under the authority of a warrant, even a 'subsequently invalidated' warrant, unless 'a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.'" United States v. Bynum, 293 F.3d 192, 195 (4th Cir. 2002) (citing Leon, 468 U.S. at 922 n.23).

There are four situations, however, in which the Leon good faith exception will not apply:

> (1) "if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth;" (2) if "the issuing magistrate wholly abandoned his judicial role in the manner condemned in Lo-Ji Sales, Inc. v. New York, 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979)"; (3) if the

>	affidavit supporting the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;" and (4) if under the circumstances of the case the warrant is "so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid."

See United States v. Doyle, 650 F.3d 460, 467 (4th Cir. 2011) (quoting United States v. DeQuasi, 373 F.3d 509, 519–20 (4th Cir. 2004)).

With respect to the third Leon exception, the Fourth Circuit has found that when an affidavit is "bare bones," it is not salvageable under Leon. See Wilhelm, 80 F.3d at 121. A "bare bones" affidavit is one that contains "wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause." Id. Here, Defendant argues that the affidavit is a bare bones affidavit. The Government, on the other hand, argues that five independent facts contained in the affidavit constitute evidence that controlled substances and related items would be found at Cantrell's home: (1) the "reliable informant's tip," (2) the firearm, (3) the unexplained cash, (4) speaking in code, and (5) the presence of a known drug supplier at the home.

The Court finds that five facts contained in the affidavit,

**MEMORANDUM OPINION AND ORDER**
**DENYING AMENDED MOTION TO SUPPRESS [ECF NO. 43]**

in concert, create probable cause that controlled substances and related items were in Cantrell's home. First, with respect to the informant's tip, two factors are "key" in analyzing whether it creates probable cause: "the informant's 'veracity' or 'reliability' and his or her 'basis of knowledge.'" Wilhelm, 80 F.3d at 118 (citing Gates, 462 U.S. at 233). In addition, the extent to which the tip is corroborated is an important consideration. See United States v. Lalor, 996 F.2d 1578, 1581 (4th Cir. 1993). The Fourth Circuit has criticized affidavits that do not mention the reliability of an informant's statements. See, e.g., Wilhelm, 80 F.3d at 120 (finding that the affidavit did not support probable cause, in part, because it "depended on information from an unnamed informant, and provided no indication of that informant's truthfulness or reliability"). That is not the case here. Here, the affidavit specifically states, "CI-19-004 has recently provided the undersigned officer with reliable information and is credible." Further, the informant told Officer Tallman that he/she had been in communication with Cantrell, that he/she and Cantrell had discussed future drug transactions, and that he/she should be able to purchase methamphetamine from Cantrell in the near future. Thus, the informant's veracity, reliability, and basis of knowledge have been established. The tip was partly corroborated by other evidence contained in the

affidavit and discussed herein. The informant's tip weighs in favor of probable cause that controlled substances and related items were in the home.

Second, while a firearm alone is insufficient to create probable cause that controlled substances are in a home, here, in combination with other evidence in the affidavit, the presence of the firearm supports probable cause. Firearms are tools of the drug trade. See United States v. Davis, 592 F. App'x 143, 144 (4th Cir. 2014) ("It is well established in this circuit that handguns are a tool of the drug trade."). The United States Probation Office located a firearm in Cantrell's home. Cantrell, as a felon on federal supervision, was not allowed to possess a firearm. As such, the firearm, in combination with other evidence, weighs in favor of probable cause that controlled substances and related items were in the home.

Third, again, in and of itself, unexplained cash would not create probable cause to search Cantrell's home. See Hyatt v. Miller, No. 1:19-cv-00250, 2022 WL 3130108, at *13 (W.D.N.C. Aug. 3, 2022) (finding that "[t]he existence of any sum of money, standing alone, is not enough to establish probable cause" to search the plaintiff's person) (citations and quotation marks omitted). Cash, after all, remains legal tender. However, here, in combination with the other facts contained in the affidavit, it

supports probable cause. See United States v. Burgos, 94 F.3d 849, 886 (4th Cir. 1996) (Michael, J., concurring) (referring to unexplained cash as a "tool[] of the drug trade"). Cantrell advised Pansy Ray on the telephone that four "bands" were in his dirty laundry basket, inside of a gray toboggan. He asked her to put $2,700.00 on his book at the jail and to use $1,300.00 for "bills, etc." He also told her to put $18,000.00 on his book at the jail. In combination with other facts in the affidavit, the existence of this amount of cash weighs in favor of probable cause that controlled substances and related items were in the home.

Fourth, it was Officer Tallman's impression, based on his experience, that Cantrell was speaking in code. Cantrell used a false name for Pansy Ray. He also told Ray to "remember what he does up where 'Bruce' watches tv" and said that "it's in the paint can." He said, "You don't have anything to worry about the State Police can't come back to the house." Officer Tallman wrote in the affidavit that he was "familiar with inmates using code words because inmates know that their phone calls are being recorded" and that "[i]n [his] training and experience, it is believed that the subjects are discussing U.S. currency and illegal controlled substances." This also weighs in favor of probable cause that controlled substances and related items were in the home.

Fifth, Pansy Ray told Cantrell on the telephone that Brian

**MEMORANDUM OPINION AND ORDER**
**DENYING AMENDED MOTION TO SUPPRESS [ECF NO. 43]**

Smith was currently at Cantrell's home. Brian Smith, as the officer wrote in the affidavit, was recently identified to law enforcement as a supplier of methamphetamine by the same informant who was cited as reliable in the affidavit. This also weighs in favor of probable cause that controlled substances and related items were in the home.

Looking at the totality of the circumstances, all of these facts, taken together, create probable cause that controlled substances and related items were in Cantrell's home. Cantrell argues that there was no probable cause, specifically, with respect to the presence of methamphetamine, but the Court disagrees. First, the informant said that he/she had been in communication with Cantrell and would be able to purchase methamphetamine from him in the near future. Second, per the phone call with Pansy Ray, known methamphetamine supplier Brian Smith was present in Cantrell's home. Considering these facts in concert with the other facts in the affidavit, there was probable cause to believe that methamphetamine was present in Cantrell's home.

Even if the warrant were not supported by probable cause, it would be salvaged by the <u>Leon</u> good faith exception. Law enforcement acted in objectively reasonable reliance on the search warrant. Further, no exception to the <u>Leon</u> exception applies. The information contained in the affidavit is not so lacking in

**MEMORANDUM OPINION AND ORDER**
**DENYING AMENDED MOTION TO SUPPRESS [ECF NO. 43]**

indicia of probable cause as to render official belief in its existence entirely unreasonable. It is not a "bare bones" affidavit. The affidavit contains at least five different facts, as discussed above, and it would be reasonable for an officer to believe that, together, they create probable cause.

### III. CONCLUSION

For the reasons discussed above, the amended motion to suppress is **DENIED** [ECF No. 43].

It is so **ORDERED.**

The Clerk is **DIRECTED** to transmit copies of this Order to counsel of record and all appropriate agencies.

DATED: November 16, 2022

_Tom S Kleeh_
THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA