IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

  **v.**                                                  **CRIMINAL NO. 2:22-CR-19**
                                                                                 **(KLEEH)**

**DONALD RAY CANTRELL,**

    **Defendant.**

**MEMORANDUM OPINION AND ORDER DENYING
SECOND MOTION TO SUPPRESS [ECF NO. 165]**

With leave of the Court, the defendant, Donald Cantrell ("Cantrell"), filed a second motion to suppress physical evidence on July 24, 2023 [ECF No. 165]. For the reasons that follow, the Court **DENIES** the motion.

### I. Background

On August 16, 2022, a grand jury named Cantrell and his co-defendant, Pansy Loraine Ray ("Ray"), in a three-count Indictment and Forfeiture Allegation [ECF No. 1]. Cantrell is charged with Conspiracy to Distribute More than 50 grams of Methamphetamine (Count 1), Unlawful Possession of a Firearm (Count 2), and Possession with the Intent to Distribute More than 50 grams of Methamphetamine (Count 3). Id.

On September 28, 2022, Cantrell moved to suppress physical evidence (suspected methamphetamine and paraphernalia) found by state police during a February 4, 2022-search of his home [ECF No.

**MEMORANDUM OPINION AND ORDER DENYING**
**SECOND MOTION TO SUPPRESS [ECF NO. 165]**

43]. He argued that the search was illegal because it was premised on a "bare bones" search warrant that was not supported by probable cause. Id. The government opposed the motion and submitted the warrant application into the record [ECF No. 47]. The Court heard argument on Cantrell's suppression motion on October 18, 2022 [ECF No. 55]. Neither party offered evidence or testimony beyond the warrant application.

On November 16, 2022, the Court issued a Memorandum Opinion and Order denying Cantrell's motion [ECF No. 63]. It found the warrant application to be supported by substantial evidence to demonstrate probable cause for the search, such as: (1) a tip from a reliable confidential informant that Cantrell would be selling methamphetamine in the near future, (2) the discovery of a firearm in Cantrell's home on February 2, 2022, (3) the unexplained presence of large sums of cash in Cantrell's home, (4) Cantrell's use of code in jail calls, including his use of a code name for his co-defendant, and (5) the presence of Brian Smith, a known methamphetamine distributor, in Cantrell's home. The Court also found that, even if the disputed warrant application was not supported by probable case, it was salvaged by the Leon good faith exception.

In December 2022, the Court appointed new counsel to represent Cantrell. Thereafter, in June 2023, defense counsel sought leave

**MEMORANDUM OPINION AND ORDER DENYING**
**SECOND MOTION TO SUPPRESS [ECF NO. 165]**

to file a second motion to suppress [ECF No. 137]. The Court granted this request. In his second suppression motion, filed July 24, 2023, Cantrell asks the Court (1) to reconsider its finding that there was probable cause for the search warrant and (2) to find that he is entitled to a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978), because the warrant application contains false or misleading information [ECF No. 165]. Id. The Government opposed the motion [ECF No. 170]. The Court heard argument on August 25, 2023 and held the motion in abeyance.

## II.  Analysis

**A.  The search warrant is supported by probable cause.**

The Court made detailed factual findings in its November 16 Memorandum Opinion denying Cantrell's first suppression motion. See ECF No. 63 at 1-4. He now asks the Court to revisit these factual findings and reverse its conclusion that probable cause existed for the magistrate to issue the search warrant for his home. For the reasons that follow, the Court declines Cantrell's invitation and incorporates by reference its prior findings of fact and conclusions of law.

    **1.  The Court properly limited its review to the warrant application.**

As an initial matter, Cantrell takes issue with the fact that neither party offered evidence beyond the warrant application at

the first suppression hearing. He contends that, had the Court heard testimony, most likely from the drafting officer and the confidential informant, it would have found the search warrant lacked probable cause. In asserting this position, Cantrell overlooks clearly established Fourth Circuit precedent which prevented the parties from submitting, and prevented the Court from considering, such additional evidence.

"When reviewing the probable cause supporting a warrant, a reviewing court must consider only the information presented to the magistrate who issued the warrant." United States v. Wilhelm, 80 F.3d 116, 118 (4th Cir. 1996). Thus, in addressing Cantrell's suppression motions, the Court's review is limited to the information contained within the four corners of the warrant application. For this reason, the parties relied solely on the warrant application during the first suppression hearing and the Court refused Cantrell's request to present testimony as to probable cause during the second suppression hearing.

   2.   **The Court did not err in finding probable cause.**

Cantrell next takes issue with the Court's reliance on several categories of evidence to find probable cause for the warrant, including: (1) information provided by a confidential informant, and (2) Cantrell's use of "code" in jail calls. As the Court thoroughly explained in its prior Memorandum Opinion and Order,

**MEMORANDUM OPINION AND ORDER DENYING**
**SECOND MOTION TO SUPPRESS [ECF NO. 165]**

the Fourth Amendment to the United States Constitution provides,

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Probable cause to search a home exists if there is a fair probability that evidence of a crime is located within the residence. See Illinois v. Gates, 462 U.S. 213, 238 (1983). Probable cause "does not require officers to rule out a suspect's innocent explanation for suspicious facts." United States v. Bosyk, 933 F.3d 319, 327 (4th Cir. 2019) (citation omitted). The Court applies a "'totality-of-the-circumstances' test to determine whether probable cause supported a search warrant." Id. (citing Gates, 462 U.S. at 238).

As to Cantrell's argument that the tip provided by the informant does not support probable cause for the warrant, the Court disagrees for the reasons articulated in its prior Memorandum Opinion and for those explained herein. Cantrell first challenges the informant's tip because they did not disclose when the sale of methamphetamine would take place or whether that the sale would occur at Cantrell's home. As the Court previously explained, the warrant affidavit vouched for the informant's reliability and

credibility and represented that Cantrell and the informant had discussed future drug transactions, including that the informant could purchase methamphetamine from Cantrell "in the near future." See ECF Nos. 63 at 7-8; 43-1 at 7. The Court previously concluded that this tip supported probable cause because the informant's veracity, reliability, and basis of knowledge had been established and the tip was partly corroborated by other evidence [ECF Nos. 63 at 7-8]. The Court reaches the same conclusion today.

In late January or early February, Cantrell stated that he would sell the informant methamphetamine "in the near future." That Cantrell and the informant had not arranged a date for the sale does not undermine in the informant's tip that Cantrell possessed, or would soon possess, methamphetamine for distribution. That the future sale might have taken place outside of Cantrell's home also is irrelevant. The affiant was not required to convince the magistrate that a sale was to occur in Cantrell's home, only that there was a fair probability that evidence of a crime was located within his home. The affiant and the magistrate logically concluded that if Cantrell possessed methamphetamine, it would likely be located in his home, especially in light of the conversations Cantrell was having with his co-defendant. And, as the Court thoroughly explained in its prior Memorandum Opinion, Cantrell's statements and actions in February

**MEMORANDUM OPINION AND ORDER DENYING
SECOND MOTION TO SUPPRESS [ECF NO. 165]**

2022 further corroborated the informant's tip.

Cantrell also takes issue with the informant's tip that Brian Smith was a "supplier of methamphetamine" [ECF No. 165 at 1]. The warrant application states that on a recorded phone call from Tygart Valley Regional Jail, Ray told Cantrell that Brian Smith was at Cantrell's home on February 4, 2022 and that "Brian Smith was recently identified as a supplier of methamphetamine by [the confidential informant]" [ECF No. 43-1 at 8]. The Court previously found that the informant's identification of Smith as a methamphetamine supplier weighed in favor of probable cause that controlled substances and related items were in Cantrell's home. It finds no persuasive reason to disturb this conclusion. The informant was known to be reliable and to have connections to the drug community. Moreover, the broader context of the conversations between Cantrell and Ray indicated the presence of controlled substances within the home and corroborated the informant's information about Smith's connection to controlled substances.

For the reasons stated, the Court again concludes that the evidence provided by the informant weighs in favor of probable cause that controlled substances and related items were in Cantrell's home because the informant's veracity, reliability, and basis of knowledge had been established and the tip was, at least partly, corroborated by other evidence.

**MEMORANDUM OPINION AND ORDER DENYING
SECOND MOTION TO SUPPRESS [ECF NO. 165]**

Cantrell next asserts that the Court erred in finding the use of code weighed in favor of probable cause because he was not using a "codename" when referring to Pansy Ray as "Lori Wilson" because that is her maiden name. Throughout the time at issue, Cantrell referred to his co-defendant Ray, as "Lori Wilson." The affidavit does not specify this as code but places all references to Wilson in quotation marks and states that law enforcement officers determined her true identity to be Pansy Ray. From this, the Government persuasively argued that Cantrell intentionally used a false name for Pansy Ray. While the Government maintains that Cantrell's use of an alias for Pansy Ray was code, it also argues that probable cause existed for the warrant without any information pertaining to "Lori Wilson." The Court agrees.

Even assuming that Cantrell's use of another name for his co-defendant was not nefarious, Cantrell's use of code was far more extensive than he acknowledges. The affidavit reports as follows:

3. On February 3, 2022, during the afternoon hours, Investigator Earl Haynes had contacted CPL D.L. VanMeter in reference to CANTTRELL's phone calls from the jail to a female, who CANTRELL identified as "LORI" and advised her, that in his dirty laundry basket, inside of a gray in color toboggan, were four "bands". CANTRELL further advised her to put $2,700.00 dollars on his book at the jail. CANTRELL advised her to use $1,300.00 dollars for bills, etc. CANTRELL further advised to not let anything happen to the truck.

4. On February 4, 2022, CPL D.L. VanMeter was contacted

>by TVRJ Investigator Earl Haynes in reference to CANTRELL. Investigator Haynes advised that he had been listening to CANTREL's phone calls. Investigator Haynes advised, CANTRELL had spoken to "LORI" and told her to remember what he does up where "Bruce" watches tv. "LORI" advised that she does, and CANTRELL then told her not to get it all out. CANTRELL advised to keep "BRUCE's" room the same way and keep everything stacked up. CANTRELL advised "LORI"; you don't have anything to worry about the State Police can't come back to the house. CANTRELL also advised "LORI" to put $18,000.00 dollars on his books at the jail. "LORI" had advised that Brian SMITH was currently at the residence. Brian Smith was recently identified as a supplier of methamphetamine by CI-19-004. CANTRELL mentions to "LORI", what sounds like, "it's in the paint can". During the phone calls the subjects appear to be talking in code. The undersigned officer is familiar with inmates using code words because inmates know that their phone calls are being recorded. In this officers training and experience, it is believed that the subjects are discussing U.S. currency and illegal controlled substances.

As previously stated, the officer's impressions of the conversation, specifically, that the co-defendants were speaking in code, weigh in favor of probable cause. Cantrell addressed ordinary objects such as "bands" and "paint cans" while giving Ray purposefully vague instructions. For example, Cantrell told her to "remember what he does up where 'Bruce' watches tv" and to "[k]eep Bruce's room the same way and keep everything stacked up."

Cantrell did not address these other uses of code in his brief but argued at the motion hearing that these were references to ordinary household places and objects. His argument is

unpersuasive. Cantrell's seemingly innocuous phrases were paired with assurances that Ray would not draw law enforcement attention: "[y]ou don't have anything to worry about the State Police can't come back to the house." Thus, the Court again concludes that, even if Cantrell did not use a codename for his co-defendant, his other extensive uses of code weigh in favor of probable cause that controlled substances and related items were in the home.

Based on the totality of the circumstances, the Court concludes that the facts alleged in the affidavit, taken together, create probable cause that controlled substances and related items were in Cantrell's home. And, as previously explained, even if the warrant were not supported by probable cause, it would be salvaged by the Leon good faith exception.

**B.   A Franks hearing is not warranted.**

At the August 25 suppression hearing, Cantrell sought to present evidence to challenge the veracity of the search warrant affidavit, pursuant to Franks v. Delaware, 438 U.S. 154 (1978). He asserted that the affidavit contained false or misleading information because it did not disclose that the information provided by the informant was stale and because it labels Cantrell's references to Ray as "Lori Wilson" as code indicative of criminal activity. The Government asked the Court to deny the motion without taking any evidence because there are no incorrect

facts in the affidavit and the disputed statements are not necessary to a finding of probable cause.

### 1. Applicable Law

"An accused is generally not entitled to challenge the veracity of a facially valid search warrant affidavit." United States v. Allen, 631 F.3d 164, 171 (4th Cir. 2011). A Franks hearing provides a criminal defendant with a narrow way to attack the validity of an affidavit. United States v. Moody, 931 F.3d 366, 370 (4th Cir. 2019). Because affidavits supporting search warrants are given a "strong 'presumption of validity,'" United States v. Colkley, 899 F.2d 297, 300 (4th Cir. 1990) (quoting in part Franks), a defendant must satisfy a "heavy" burden before a Franks hearing can occur. United States v. Tate, 524 F.3d 449, 454 (4th Cir. 2008). "[T]o obtain the hearing, a defendant must make a substantial preliminary showing that (1) law enforcement made a false statement; (2) the false statement was made knowingly and intentionally, or with reckless disregard for the truth; and (3) the false statement was necessary to the finding of probable cause." Moody, 931 F.3d at 370 (quotations and citations omitted).

"The first required showing, of falsity, cannot be conclusory and must rest on affidavits or other evidence." Id. (citing Franks, 438 U.S. at 171; United States v. Clenney, 631 F.3d 658, 663 (4th

Cir. 2011)). The defendant cannot rely on a purely subjective disagreement with how the affidavit characterizes the facts. Franks, 438 U.S. 154, 171 (1978). His argument must be "supported by more than a mere desire to cross-examine" and he must provide evidence showing that the statements at issue are objectively false. Id. Because "warrant affidavits are 'normally drafted by nonlawyers in the midst and haste of a criminal investigation' . . . [t]hey must be interpreted in a commonsense manner, neither held to the standard of what judges or lawyers feel they would have written if given the opportunity nor 'judged as an entry in an essay contest.'" United States v. Somerlock, 602 F. Supp. 3d 791, 801 (D. Md. 2022) (quoting Moody, 931 F.3d at 372).

The second showing is "just as demanding." Id. at 371. To demonstrate an intentional falsity or reckless disregard for the truth, the defendant against "must provide facts—not mere conclusory allegations—indicating that the officer subjectively acted with intent to mislead, or with reckless disregard for whether the statements would mislead, the magistrate." Id. (citing Colkley, 899 F.2d at 301). Innocent or negligent mistakes are insufficient to justify a Franks hearing. Id. at 372; Franks, 438 U.S. at 170. Only deliberate falsity or reckless disregard of the affiant is relevant; not that of any nongovernmental informant. Id.

**MEMORANDUM OPINION AND ORDER DENYING**
**SECOND MOTION TO SUPPRESS [ECF NO. 165]**

Finally, as to materiality, the defendant must show "that the false statements were "necessary to the finding of probable cause." Franks, 438 U.S. at 156; United States v. Wharton, 840 F.3d 163, 168 (4th Cir. 2016). If, after excluding the offending information from the affidavit, sufficient facts remain to support a finding of probable cause, no Franks hearing is required. Id. at 172. "This limitation reflects the ultimate purpose of Franks: 'to prevent the admission of evidence obtained pursuant to warrants that were issued only because the issuing magistrate was misled into believing that there existed probable cause.'" Moody, 931 F.3d at 372 (quoting United States v. Friedemann, 210 F.3d 227, 229 (4th Cir. 2000)).

### 2. Cantrell failed to show that the warrant application contains false or misleading information.

During the August 25, 2023-suppression hearing, Cantrell argued that affidavit was misleading because it failed to inform the magistrate that the information provided by the informant was stale. Based on defense counsel's interview of the informant prior to the second suppression hearing, he represented that the informant's tip would have been "at least two to three to four weeks old" by the time the warrant application was submitted to the magistrate. On the record before it the Court cannot agree that the warrant application contains any false or misleading

information related to the informant's tip.  It states that "[d]uring the latter part of January and early part of February 2022, Corporal J.M. Tallman, WVSP B.C.I./MRDTF, had spoken with a reliable confidential informant, CI-19-004 who had been in communication with Donald Ray CANTRELL" [ECF No. 43-1 at 7 (emphasis added)].  The application appears to have been drafted by the affiant on February 2, 2022 and submitted to the magistrate on February 4, 2022.  Even if officer's conversation with the informant occurred several weeks in advance, the warrant affidavit did not misrepresent this fact to the magistrate.

Second, Cantrell contends that the warrant affidavit contained false or misleading information because it labels his references to Ray as "Lori Wilson" as code.  According to him, the affiant interviewed Ray on February 4, 2022, the same day he submitted the warrant application, and Ray informed him that she goes by both names and that "Lori Wilson" is her maiden name.  Cantrell therefore asserts that the affiant falsely represented that Cantrell had used a codename for Ray, which could be indicative of criminal activity.

In its response to Cantrell's first suppression motion, the Government suggested that Cantrell's use of a codename for his co-defendant was to avoid detection of law enforcement and, in combination with other factors, provided probable cause for the

search warrant. Based on the totality of the circumstances, the Court agreed. Faced with Cantrell's second suppression motion, the Government maintains that Cantrell was referring to his co-defendant with a codename.

Mindful that Cantrell's "burden is a heavy one," Jeffus, 22 F.3d at 558, the Court cannot find that he has demonstrated that the warrant contains false information in reference to Ray. The warrant application notes that, on February 2, 2022, Cantrell was arrested at his home for violating the conditions of his supervised release in an unrelated case [ECF No. 43-1 at 7]. Ray was present during this arrest and Cantrell identified her as "Lori Wilson." Id. When approached by law enforcement, Ray identified herself as "Pansy Loraine Ray" and provided identifying documents bearing this name. Id.

The warrant application also summarizes Cantrell's behavior following his arrest and notes his references to Ray as "Wilson." The warrant application places all references to "Lori Wilson" in quotation marks but does not characterize this as code. As discussed above, the affiant instead opined that Cantrell and Ray were using code to avoid law enforcement attention during a recorded jail call. Specifically, the warrant application states:

> During the phone calls the subjects appear to be talking in code. The undersigned officer is familiar with inmates using code words because inmates know that their

>phone calls are being recorded. In this officers training and experience, it is believed that the subjects are discussing U.S. currency and illegal controlled substances.

Id.

Thus, the warrant does not characterize "Lori Wilson" as a codename nor does it assert that Cantrell's use of a different name was for a criminal purpose. Instead, it indicates that Cantrell consistently referred to his co-defendant by one name but she identified herself to law enforcement by another. The affiant also qualified his opinion stating that "the subjects <u>appear</u> to be talking in code." Finally, although Cantrell represents that the warrant application was submitted to the magistrate the same day the affiant interviewed Ray, it is unclear from the record whether the interview occurred before or after the warrant application was submitted to the magistrate. The Court therefore cannot conclude that Ray told the affiant that "Lori Wilson" was her maiden name before he submitted the warrant application. For these reasons, Cantrell has failed to make a substantial preliminary showing that the affiant made a false statement in the warrant application.

    **3.   Cantrell failed to show the requisite intent.**

In order to be granted a <u>Franks</u> hearing, Cantrell must also have made a "substantial preliminary showing" that the affiant either knowingly and intentionally made a false statement, or was

reckless with regard to the truth. "'[M]ere[ ] negligen[ce] in ... recording the facts relevant to a probable-cause determination' is not enough" to merit a Franks hearing, Colkley, 899 U.S. at 301 (quoting Franks, 438 U.S. at 171), because inadvertent omissions or slight variations that are not consciously done cannot be knowing or intentional. For the reasons discussed, Cantrell has also failed to satisfy the second prong of the Franks analysis. He has provided only conclusory allegations about the affiant's intent in allegedly concealing the staleness of the informant's tip and misrepresenting references to Ray as "Lori Wilson" as code. This is insufficient to meet the demanding standard in place and Cantrell has not made a substantial preliminary showing as to intentionality.

### 4. The contested portions of the warrant application are not material to a finding of probable cause.

Even if the disputed information was false or misleading, Cantrell has not shown that these facts are material to the probable cause analysis. The magistrate could have still found the informant's tip to be reliable and timely even if obtained four weeks in advance. And, as discussed above, there was probable cause for the magistrate to issue the warrant based on the totality of the circumstance regardless of whether Cantrell used a codename for his co-defendant.

**MEMORANDUM OPINION AND ORDER DENYING**
**SECOND MOTION TO SUPPRESS [ECF NO. 165]**

Thus, Cantrell has failed to make the "substantial preliminary showing" of an intentionally or recklessly false statement material to the finding of probable cause to warrant a <u>Franks</u> hearing. Even if he had, a <u>Franks</u> hearing is still unwarranted because the contested portions are not material to probable cause.

### III. CONCLUSION

For the reasons discussed above, the Court **DENIES** Cantrell's second motion to suppress [ECF No. 165].

It is so **ORDERED**.

The Clerk is **DIRECTED** to transmit copies of this Order to counsel of record and all appropriate agencies.

DATED: September 14, 2023

*/s/ Tom S Kleeh*
THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA